**UNITED STATES DISTRICT COURT FOR THE**

**NORTHERN DISTRICT OF INDIANA**

**SOUTH BEND DIVISION**

| | | |
|---|---|---|
| **STEPHEN L. SNOW** § | | CIVIL ACTION NO: |
| *Plaintiff* § | | |
| v. § | | |
| **FOREST RIVER, INC.** § | | |
| *Defendant* § | | JURY TRIAL REQUESTED |

**COMPLAINT**

### I. Parties

1. Plaintiffs, **STEPHEN L. SNOW**, is an individual that is now and has been at all times a citizen of the State of Arkansas.

2. Defendant, **FOREST RIVER, INC.**, hereinafter "**FOREST RIVER**" is a corporation authorized to do and doing business in the State of Indiana with its principal place of business located at 900 CR 1, PO Box 3030, Elkhart, in, 46515, USA and is a warrantor of a Recreational Vehicle that Plaintiffs purchased and is a merchant in goods of the kind involved in this case.

**FOREST RIVER** agent for service of process is Joseph Greenlee, 900 County Road 1, Elkhart, IN 46514.

### II. Jurisdiction

3. This court has jurisdiction over the lawsuit under 28 U.S.C. §1332(a)(1) because Plaintiffs, and Defendants are citizens of different states and the amount in controversy exceeds $75,000.00. excluding interest and costs.

This court also has jurisdiction over this lawsuit because the suit arises under the Magnuson-Moss Warranty Act pursuant to 15 USC § 2310(d).

This court also has supplemental jurisdiction under 28 USC § 1367 over Plaintiff's state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

### III.   Venue

5. Venue is proper in this district under 28 U.S.C. §1391(a)(3) because the Defendant is subject to personal jurisdiction in this district and there is no other district where the suit may be brought.

### IV.   Conditions Precedent

6. All conditions precedents have been performed or have occurred.

### V.   Facts

#### A.   The Transaction

7. On March 5, 2016, Plaintiffs purchased a new **2016 PRIMETIME SPARTAN** bearing VIN 5ZT3ST2FXGG300641, hereinafter "**SPARTAN**," from **COMPASS RV PROTECTION**.

The "**SPARTAN**," was purchased primarily for Plaintiffs' personal use. The sales contract was presented to Plaintiffs at the dealership and was executed at the dealership.

8. The total sales price of the **SPARTAN** including finance charges will be $64,645.80.00. Plaintiffs made a down payment in the amount of $15,000.00. The total damages to Plaintiff will be over $75,000.00. Civil or Punitive penalties for breach of warranty

are recoverable under the Warranty Act, if they are recoverable for breach of warranty under the applicable state law. See **Hughes v. Segal Enterprises, Inc.**, **627 F. Supp. 1231, 1238 (W.D. Ark. 1986);** **Chariton Vet Supply, Inc. v. Moberly Motors Co.**, **2:08CV47MLM, 2009 WL 1011500 (E.D. Mo. Apr. 15, 2009).**

### B. Implied Warranties

9. As a result of the sale of the **SPARTAN**, by Defendants to Plaintiffs, an implied warranty of merchantability arose in the transaction which included the guarantee that the **SPARTAN**, would pass without objection in the trade under the contract description; and that the **SPARTAN**, was fit for the ordinary purpose for which such motor vehicles are purchased.

10. Subsequent to the sale, an implied warranty arose in connection with the repairs performed by the Defendants. Specifically, the Defendants impliedly warranted that the repair work had been performed in a good and workmanlike manner.

### C. Express Warranties

11. In addition to the implied warranties that arose in the transaction, certain representations and express warranties were made, including, that any malfunction in the **SPARTAN**, occurring during a specified warranty period resulting from defects in material or workmanship would be repaired, and that repair work on the **SPARTAN**, had, in fact, repaired the defects.

12. Plaintiffs's purchase of the **SPARTAN**, was accompanied by express warranties offered by the Defendants, **FOREST RIVER**'s , and extending to Plaintiffs. These warranties were part of the basis of the bargain of Plaintiffs's contract for purchase of the **SPARTAN**,.

13. The basic warranty covered any repairs or replacements needed during the

warranty period due to defects in factory materials or workmanship. Any required adjustments would also be made during the basic coverage period. All warranty repairs and adjustments, including parts and labor, were to be made at no charge. Additional warranties were set forth in the **FOREST RIVER**'s warranty booklet and owners manual.

### D.  Actionable Conduct

14.  In fact, when delivered, the **SPARTAN**, was defective in materials and workmanship, with such defects being discovered within the warranty periods. Many defective conditions have occurred since purchase, including, but not limited to, the following statement in the Plaintiffs' own words to **FOREST RIVER**'s :

> **"Mar. 3, 2016**
>
> **Purchased Tay Hauler from Colaw RV in Carthage, MO. We had mentioned during the initial walk through that the jacks an the automatic leveling system seemed law but we were assured they were not. On the way home ta Searcy, AR, the piping that seals the screws securing the under part beneath the front of the King Pin area of the RV came loose. I tried to stuff it back in but as we proceeded it continued to came loose. I duct taped it. We stopped for the night at an RV park in Fayetteville and during the night discovered a window in the large passenger side slide would not close. We had to stuff a towel in the area ta keep the rain from coming in through the window. Remember, BRAND NEW RV!**
>
> **Mar. 19, 2016**
>
> **Headed ta Florida on Spring Break ta visit family. On the way down we pulled into a mall area in Alabama and as we had mentioned earlier the jacks being too low we scraped several jacks and bent one ta the paint it could not be used the remainder of the t rip. Several other times during the trip we scraped some of the other jacks just pulling into or out of service stations or going across dips on roads.**
>
> **BY THE WAY, THIS IS NOT THE FIRST RV WE HAVE**

-4-

**OWNED AND TRAVELED WITH. WE HAVE BEEN RVING ABOUT 25 YEARS. IF MY MEMORY SERVES ME CORRECTLY THIS IS OUR gm RV. WE ARE NOT ROOKIES AT THIS.**

**After returning from the Spring Break escapade, I set up a time ta take off work and deliver the RV to Colaws which is 300 miles each direction. I spent the night on Thursday in a Walmart parking lot and arrived early Friday. They started working on a list of issues from the sound system in the BRAND NEW RV not only working off and on ta the bent jack, the piping mentioned earlier, to the window that would not close (seems you have to stand an the couch and slam it really hard and ta open it you have to stand on the couch and pound on it until it finally and stiffly opens). There were also scrapping noises coming from beneath the kitchen slide in. I was allowed ta stay in my RV in the shop over night so they could continue working on it. I left late Saturday hoping that all was good. I did appreciate the hard work and concern Steve Jones, the service manager at the time, afforded me.  BUT, on the way home the piping was flaying to and fro as I drove down the road. Duct taped again .**

**In June of 2016**

**in my BRAND NEW RV, my wife and I left to go RVing in the Great Smokey Mtns. area. Upon arriving I could not get the automatic leveling system to work, so I did it manually. Then the battery would not hold a charge so I proceeded to the local Auto Zone in Pigeon Forge, TN and sure enough it was dead. I called Steve Jones back at Colaws and he said buy one send him a picture of the receipt and he would reimburse me. After sending and resending and reminding him and others, I received the check for the battery on Oct. 29, 2017. A year and a half later.**

**We left there and headed to Colorado to go RVing some more. Upon arriving in CO and taping the piping again and not having the use of the automatic leveling system, I was getting ready to dump the "potty water" in Rocky Mountain National Park with a line of RVs waiting their turns behind me and as I opened the cap on the drain for the system my "poop" ran all over the ground. I have**

"dumped" "potty water" and grey water many times in the past and NEVER had that happen. Arriving in Southern CO to continue our vacation, the dumping of the sewage happened again. We have pictures. RV parks do not like that and again, I am very adept at it. We finally left and headed home and I thought we might have a roof leak as I found a wet spot in the middle of the upstairs bed after a rain. Then after a storm in Oklahoma it was definitely leaking onto our bed.

*July* 29, 2016

After arriving home, and talking to the people back at Colaws, I decided to forgo the 300 miles each direction trip and go to the 45 mile trip to River City RV in Sherwood, AR a Forest River dealer. Prime Time is a branch of Forest River. I finally picked it up from them on Sept. 17, 2016, seven weeks later. When they called me to tell me it was ready they told me they could not get any of the problems to reoccur. As I was driving there, they called back and said they finally got the "potty water" to act like I said it was and after I arrived they said they could correct the problem. So I waited. Still no fix for the leaking roof, they said the sound system was fine, and so on.

As Fall was coming, J noticed when I was washing it that the cap on the front of the RV was fading. I called Colaws and Steve Jones, the service manager, informed me they had several similar problems
with some of the other similar Forest River RVs they had sold. He asked me to drop it by (another round trip of 600 miles) so I dropped it Dec. 3, 2016 as an ice storm was blowing in. I did not get it back until April 2017 another 5 months.

June 2017

We headed to CO and excited about our trip. Still having issues with potty water and grey water leaking, we did the best we could in our now a little over one year old RV. As we moved from RMNP to Fun Valley, CO which we had been to 8 days before RMNP, I was hooking up the sewage line and as I removed the cap from the RV I heard an explosion and felt the compression from it so loud my wife

came running around the RV to find me cover in our family "poop." It was in my mouth, my nose, my eyes, covering me. Never in 25 years of RVing have I ever had that happen or heard of it happening. These things are vented to prevent it from happening, so again my barely a year old RV betrayed me and my wife again.

Then I had some men who do a mobile RV wash business look at me and say, "the decals on the front of your vehicle are bubbling up and they are out of line." These are the decals that had to be replaced after Colaws removed the fading clear coat and put new clear coat on.

July 17, 2017 I dropped my RV back at Colaws so they could correct the decals and a list of other things that still were not working. (Leak on the roof, automatic leveling system, decals, large screws missing from the under pinning of the king pin area, etc.) Now I was dealing with a new Service Manager by the name of John who had heard about my plight and apologized profusely on numerous occasions. After contacting the company to get the decals, he reported they arrived but not au of th em. After many weeks, in my frustration, I called Prime Time on Oct. 13, 2017 and talked with Jeff Ranks and explained the situation. He said he would see what he could do. I called back and left a message with Jeff on Oct. 18, 2017. Not long after that the decals arrived.

John, the service manager at Colaws, called and said the RV was ready. He told me they found the roof leak issue and corrected it. A gasket around the air conditioner had been installed incorrectly.

Oct . 28, 2017

I arrived at Colaws 300 more miles one way to find the RV filthy, the decals not lined up and the clear coat starting to chip loose. I also noticed one of the main landing jacks leaning slightly. Upon pointing it out, one of the really good technicians noticed the medal tubing was severely bending and about to break, so he repaired it with reinforced metal. Upon checking the same jack on the other side, he found the same issue, so he repaired that problem.

-7-

>**300 miles back home and the decals are wrinkled and the clear coat is coming off.**
>
>**Enough is enough. I have been making payments all this time and I have missed many RVing trips because it was in the shop. Makes me nervous to take it out anymore."**

15. Since purchase, Plaintiffs have returned their **SPARTAN**, to the Defendant and its authorized warranty service dealers for repairs on numerous occasions. Despite this prolonged period during which Defendant were given the opportunity to repair the **SPARTAN**,, the more significant and dangerous conditions were not repaired. Defendant failed to repair the vehicle so as to bring it into conformity with the warranties set forth herein. From the date of its purchase, the **SPARTAN**, continues to this day to exhibit some or all of the non-conformities described herein.

16. The defects experienced by Plaintiffs with the **SPARTAN**, substantially impaired its use, value and safety.

17. Plaintiffs directly notified all Defendants and each of them of the defective conditions of the **SPARTAN**, on numerous occasions. Plaintiffs notified Defendants that they wanted a rescission of the sale of the **SPARTAN**, but Defendants have failed and refused to buy back Plaintiffs' defective **SPARTAN**,.

18. Since purchase, Plaintiffs have returned their **SPARTAN**, to Defendants and authorized warranty service dealers for repairs on numerous occasions. Despite this prolonged period during which Defendants were given the opportunity to repair the **SPARTAN**,, the more significant and dangerous conditions were not repaired. Defendants failed to repair the vehicle so as to bring it into conformity with the warranties set forth herein. From the date of its purchase, the **SPARTAN**, continues to this day to exhibit some

or all of the non-conformities described herein.

19. The defects experienced by Plaintiffs with the **SPARTAN**, substantially impaired its use, value and safety.

20. Plaintiffs directly notified all Defendants and each of them of the defective conditions of the **SPARTAN**, on numerous occasions. Plaintiffs notified Defendants that they wanted a rescission of the sale of the **SPARTAN**, but Defendants have failed and refused to buy back Plaintiffs' defective **SPARTAN**,.

## VI.   Causes of Action

**COUNT 1:   VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**

21. Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

22. Plaintiffs are a "consumer" as defined in the Magnuson-Moss Warranty Act (hereinafter "Warranty Act"), 15 U.S.C. § 2301(3).

23. Defendants, **FOREST RIVER**, is a "supplier" and "warrantor" as defined in the Warranty Act, 15 U.S.C. § 2310(4) and (5).

24. The **SPARTAN**, hereinabove described is a "consumer product" as defined in the Warranty Act, 15 U.S.C. § 2301(l), because it is normally used for personal purposes and Plaintiffs in fact purchased it wholly or primarily for personal use.

25. The express warranties more fully described hereinabove pertaining to the **SPARTAN**, is a "written warranty" as defined in the Warranty Act, 15 U.S.C. § 2301(6).

26. The actions of Defendants and each of them as hereinabove described, in failing to tender the **SPARTAN**, to Plaintiffs free of defects and refusing to repair or replace the defective **SPARTAN**, tendered to Plaintiffs constitute a breach of the written and

implied warranties covering the **SPARTAN**, and hence a violation of the Magnuson-Moss Warranty Act.

27. Plaintiffs have performed all things agreed to and required of them under the purchase agreement and warranty, except as may have been excused or prevented by the conduct of Defendants as herein alleged.

28. As a direct and proximate result of the acts and omissions of Defendants and each of them as set forth hereinabove, Plaintiffs have been damaged hereinabove in an amount in excess of $75,000.00 according to proof at trial.

29. Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(2), Plaintiffs are entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended. As a proximate result of the misconduct of Defendants as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton. Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection therewith.

**COUNT 2:   BREACH OF EXPRESS WARRANTIES AND/OR CONTRACT**

30. Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

31. Th Defendants' advertisements and statements in written promotional and other materials contained broad claims amounting to a warranty that Plaintiffs' **SPARTAN**, or those similarly situated were free from inherent risk of failure or latent defects. In addition, the Defendants issued an expressed written warranty which covered the **SPARTAN**, and warranted that the **SPARTAN**, was free of defects in materials and work

quality at the time of delivery.

32.  As alleged above, the Defendants breached its warranties by offering for sale, and selling as safe to Plaintiffs, an **SPARTAN**, that was latently defective, unsafe, and likely to cause economic loss to Plaintiffs.

33.  In breach of the foregoing warranties, the Defendants have failed to correct said defects.

34.  The damages Plaintiffs have suffered are a direct and proximate result of Defendant' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

### COUNT 3:   BREACH OF IMPLIED WARRANTIES

35.  Plaintiffs reallege and incorporate herein by reference each and every allegation set forth in the preceding paragraphs.

36.  The Defendants impliedly warranted that Plaintiffs' **SPARTAN**,, which it designed, manufactured, and sold, were merchantable and fit and safe for their ordinary use, not otherwise injurious to consumers, and would come with adequate safety warnings.

37.  Any purported limitation of the duration of the implied warranties contained in the written warranties given by Defendants is unreasonable and unconscionable and void under the principles of estoppel, because Defendants knew the defects existed and might not be discovered, if at all, until the **SPARTAN**, had been driven for a period longer than the period of the written warranty, and Defendants willfully withheld information about the defects from Plaintiffs.

38.  Because of the defects, Plaintiffs' **SPARTAN**, is unsafe and unfit for use and

has caused economic loss to the Plaintiffs. Therefore, the Defendants breached the implied warranty of merchantability.

39. The damages Plaintiffs have suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

### VII.   Economic and Actual Damages

40. Plaintiffs sustained the following economic and actual damages as a result of the actions and/or omissions of Defendants described herein above:

    a.. Out of pocket expenses, including but not limited to the money paid towards the note securing the vehicle;

    b. Loss of use;

    c. Loss of the "benefit of the bargain";

    d. Diminished or reduced market value; and

    e. Costs of repairs.

### XI.   Attorney Fees and Costs

41. Plaintiffs are entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended. As a proximate result of the misconduct of Defendants as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton. Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection therewith.

## XII.  Prayer

42.  For these reasons, Plaintiffs pray for judgment against the Defendants for the following:

    a.  For general, special and actual damages according to proof at trial;

    b.  Rescinding the sale of the **2016 PRIMETIME SPARTAN** bearing VIN **5ZT3ST2FXGG300641** and returning to Plaintiffs the purchase price including all collateral costs at the time of the sale, any and all finance charges, insurance premiums, maintenance costs, repair costs, and damages;

    c.  For incidental and consequential damages according to proof at trial;

    d.  Out of pocket damages for expenditures related to any cost of repairs, deductibles; and towing charges.

    e.  Any diminution in value of the **SPARTAN**, attributable to the defects;

    f.  Past and future economic losses;

    g.  Prejudgment and post-judgment interest;

    h.  Damages for loss of use of vehicle;

    I.  Civil Penalties and/or Punitive damages;

    j.  Damages for mental anguish;

    k.  Attorney fees;

    l.  Costs of suit, expert fees and litigation expenses; and

    m  All other relief this Honorable Court deems appropriate.

## XIII.  Demand for Jury Trial

43.  Plaintiffs hereby demands trial by jury to the extent authorized by law.

RESPECTFULLY SUBMITTED:

BY: /s/ *Richard C. Dalton*
Richard C. Dalton
Texas Bar No. 24033539
Louisiana Bar No. 23017
California Bar No. 268598
1343 West Causeway Approach
Mandeville, Louisiana 70471
E-mail: rick@rickdaltonlaw.com
Tel. (985) 778-2215
Fax: (985) 778-2233

ATTORNEY FOR PLAINTIFF